(No. 25730.—

THE PEOPLE *ex rel.* Thomas J. Courtney, State's Attorney, *et al.* Appellants, *vs.* G. G. BOTTS *et al.* Appellees.

*Opinion filed April 10, 1941—Rehearing denied June 4, 1941.*

WEST & ECKHART, and ASHCRAFT & ASHCRAFT, for appellants.

ORR, SULLIVAN & RICKS, and WHITMAN, HOLTON & TEWS, (WARREN H. ORR, ROLAND D. WHITMAN, and LOREN E. LEWIS, of counsel,) for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

The State's attorney of Cook county filed in the circuit court an amended complaint in the nature of *quo warranto* against appellee G. G. Botts, requiring him to show by what authority or right he claimed to hold and execute the office of director of the Riverview Park Company, an Illinois corporation, to the exclusion of Thomas G. Deering, and the office of secretary of said corporation to the exclusion of William F. Merle, Jr., and the office of second

vice-president to the exclusion of Henry J. Merle, and against E. E. Mitchell, requiring him to show by what right or authority he claimed to hold and execute the office of treasurer of said corporation to the exclusion of William F. Merle, Jr.

The relators set forth all of the facts upon which they were entitled to claim an ouster, and the defendants, Deering, William F. Merle, Jr., and Henry J. Merle, each answered admitting all of the material allegations. The defendants Botts and Mitchell made a motion to dismiss, which was sustained. The People on the relation of the State's attorney and Thomas G. Deering perfected an appeal to this court on the ground that the construction of section 3 of article 11 of the constitution of the State of Illinois was involved.

In the trial court the question involved was whether Botts or Deering was elected director of the Riverview Park Company at a stockholders' meeting held on December 12, 1938. The corporation had issued and had outstanding 1000 shares of stock, all of which was represented at the meeting.

William Schmidt died in 1924 owning 548 shares of said stock. He left a will by which the stock was placed in trust with Wilhelmina Schmidt, the widow, and the State Bank of Chicago, as trustees. In due course, the Northern Trust Company succeeded the said State Bank of Chicago as corporate trustee. The widow died and George Alvin Schmidt succeeded her as trustee. The pertinent provision of the will provided that "so long as my said wife, Wilhelmina Schmidt, and my son, George Alvin Schmidt, or either of them live, said trustee, the State Bank of Chicago, shall be authorized and allowed to vote so much and so much only of the stock of The Riverview Park Company as may be sufficient to elect one director of said Riverview Park Company and my said trustees, Wilhelmina Schmidt

and George Alvin Schmidt, whichever of them may be likewise at the time serving as trustee under this instrument, shall be authorized and allowed to vote the remaining trust stock of said Riverview Park Company."

At the December, 1938, election, 273 shares of said stock stood in the name of the Northern Trust Company and George Alvin Schmidt, as trustees. The Northern Trust Company, claiming power under said provision of the will, gave Thomas G. Deering 835 votes, being 5 votes for each of 167 shares of the stock held in said trust. Botts received 625 votes. George Alvin Schmidt refused to join in voting said stock, and the directors refused to recognize the vote of the Northern Trust Company, as trustee, and declared Botts elected director. The board of directors then elected Botts secretary and second vice-president and Mitchell as treasurer.

Appellees contend the case has become moot and that the appeal should be dismissed. The judgment of the trial court dismissing the amended complaint, from which this appeal has been taken, was entered December 11, 1939. An affidavit is attached to appellee's brief showing that at the annual meeting of the stockholders held on December 20, 1939, Thomas G. Deering was not nominated or voted upon as director of said company, and that appellee Botts was nominated and elected to the office of director for a period of one year, and until his successor was elected and qualified.

'Ordinarily when a reviewing court has notice of facts which show that only moot questions or abstract propositions are involved it will dismiss the appeal, and will not review the cause merely to decide such questions. (*People v. Village of Oak Park*, 356 Ill. 154; *National Jockey Club v. Illinois Racing Com.* 364 id. 630.) The authorities sustaining this proposition have not been applied in *quo warranto* proceedings where the term of office of the contesting

party has expired. The Illinois statute on *quo warranto* (Ill. Rev. Stat. 1939, chap. 112, sec. 1) provides when and at whose instance the writ may be issued, and includes cases in which both public and private rights are usurped. Section 1, as applying to private rights reads, in case "Any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, or any office in any corporation created by authority of this State," etc. Section 6 provides: "The court shall determine and adjudge the rights of all parties to the proceeding. In case any person or corporation against whom such complaint is filed is adjudged guilty as charged in the complaint the court may give judgment of ouster against such person or corporation from the office, or franchise, and fine such person or corporation, and also give judgment in favor of the relator for the cost of the prosecution," etc.

The Illinois statute is modeled on the statute of Anne relating to *quo warranto* (9 Anne, chap. 20,) which was enacted for the purpose of rendering proceedings in the nature of *quo warranto* more speedy and effectual. It has been held that under that statute, and the statutes of other States containing a provision for a fine, the case does not become moot although the usurpation was not continued to the date of trial. *King* v. *Williams,* 1 Blackstone's Rep. 93; *Regina* v. *Blizzard, L. P.,* 2 Q. B. 55; *Hammer* v. *Richards,* 44 N. J. L. 667; *Turter* v. *Turley,* 103 N. J. L. 526, 138 Atl. 209.

There are cases holding that the plaintiff or relator in a *quo warranto* proceeding may prosecute the case to a final judgment, notwithstanding the expiration of the term of office before the case is finally adjudicated. *People* v. *Rodgers,* 118 Cal. 394, 46 Pac. 741; *Commonwealth* v. *Casey,* 133 Mass. 538.

In *People* v. *Gartenstein,* 248 Ill. 546, this court said: "The information in the nature of *quo warranto* is the

substitute for the ancient writ of *quo warranto,* and when the proceeding by information was introduced it was essentially a criminal method of prosecution to punish encroachments upon the prerogative of the crown. It still retains that character to the extent that the proceedings are in the name of the People and criminal in form for the double purpose of punishing the usurper and ousting him from the enjoyment of the franchise."

It has been suggested that the punishment for usurpation mentioned in section 6 of the Quo Warranto act only applies to public officials and not to private officers. We do not think the statute can be so construed. Section 1 of the act includes all cases for which the remedy is available, and includes private rights as well as public rights. Section 6 provides for judgment against any person when adjudged guilty, and provides for both ouster and fine. The expiration of the office might terminate the private right of the plaintiff, but it would not terminate the jurisdiction of the court to adjudge punishment for the violation of the law. The cases cited by appellee do not involve *quo warranto* proceedings. We are of the opinion that the case did not become moot by termination of the term for which appellant Deering claimed he was elected.

On the face of the pleadings this is a contest between appellant Deering and appellee Botts for the office of director in the Riverview Park Company, and incidentally, depending upon the result thereof, for the offices of secretary and treasurer of such company. The State's attorney is a nominal party.

The question whether Botts or Deering was elected director of the Riverview Park Company depends upon whether the Northern Trust Company, as trustee, had the right to cumulate 167 shares and thereby cast 835 votes for the latter over the objection of his co-trustee, George A. Schmidt. Much space has been devoted in the argument

to ascertaining the intention of the testator by attempting to construe his will with respect to the power granted to the corporate trustees under the William Schmidt will. This issue is not material in a *quo warranto* proceeding, as the records of the corporation must be examined to determine whether the justification of the respondent is sufficient in law. The will of William Schmidt placed the title to the stock involved in two trustees. It is well recognized that trustees hold title jointly and to vote corporate stock must act jointly, either in person or by proxy. *Coleman* v. *Connolly*, 242 Ill. 574; *Pennsylvania Co.* v. *Bauerle*, 143 id. 459.

Appellants, however, claim an express right and authority to vote sufficient stock to elect a director under the terms of the will which provides the corporate trustee "shall be authorized and allowed to vote so much, and so much only, of the stock of the Riverview Park Company as may be sufficient to elect one director of the said Riverview Park Company," etc. On the other hand, appellees assert that to so permit the corporate trustee to thus vote such stock would separate the voting power of the stock from the ownership thereof, contrary to our holding in *Luthy* v. *Ream,* 270 Ill. 170. Appellants cite *Venner* v. *Chicago City Railway Co.* 258 Ill. 523, and *Babcock* v. *Chicago Railways Co.* 325 id. 16, both of which hold that there is no statute or law which prohibits the creation of a trust of the stock of a corporation for the purpose of controlling the management, and, therefore, the Northern Trust Company was properly acting under the principle announced in these cases. There is an apparent variance with the holding in the last mentioned cases and *Luthy* v. *Ream, supra,* but analysis discloses that the *Luthy case* was decided upon the excessive and arbitrary power given to the trustee under special circumstances because the opinion recognizes the principle laid down in the case of *Venner*

v. *Chicago City Railway Co. supra.* The *Luthy case* does not purport to overrule the *Venner case,* nor is the *Luthy case* mentioned in the later case of *Babcock* v. *Chicago Railways Co. supra,* as being at variance with our holding therein, so it may be regarded as applying to the particular facts in that case and not as laying down a general rule that corporate stock may not be placed in the name of trustees for voting purposes. We do not, however, regard the question of a trustee's right to vote the stock equitably belonging to another as the controlling question in this case. The real issue involved is whether, at the stockholder's meeting of the Riverview Park Company, the Northern Trust Company had the uncontrolled right to vote 167 shares of stock against the wishes of its co-trustee.

In *quo warranto* to test the title to the office of director of a corporation, which necessarily depends upon the stockholders' vote, the issue must be determined by the corporate records. In *People* v. *Lihme,* 269 Ill. 351, which was a like proceeding to determine title to the office of a director in a corporation, the trustee under the will of the testator was authorized to transfer one or two shares to another person to qualify him as a director of the corporation. The trustee transferred one share to Lihme, who acknowledged that the stock was not held by him under any claim of ownership and was not a part of his estate. Lihme's vote was the determining factor in the election. The court held, among other things, "the person in whose name stock is entered on the books of the company, whether as trustee or an individual is, as between himself and the company, the owner to all intents and purposes and particularly for the purposes of an election." In *Babcock* v. *Chicago Railways Co. supra,* we said: "A trustee who is registered in the stock register of a corporation as the owner of stock is vested with the legal and equitable title, subject only to the provisions of the trust,

and has the right to vote his stock and is eligible to the office of director."

Under these authorities it would appear that the right to vote the corporate stock at stockholders' meetings would be in the legal owners thereof. In this case, the legal owners are the Northern Trust Company and George A. Schmidt, as trustees, jointly. As pointed out above, in voting they must act jointly, or one give the other a proxy. This was not done, and except for the provisions contained in the will of William Schmidt the directors acted properly in refusing to consider the attempted voting of 167 shares by the Northern Trust Company. The will of Schmidt is not a part of the corporate records. The will places the title in the trustees jointly, and they appear as joint owners upon the corporate register. How the trustees and other owners should vote in a corporate meeting, or whether or not the trustee or proxy must follow directions is not the province of such a meeting to decide. The question of how the stock should be voted under the directions contained in the will of Schmidt is for a court having jurisdiction over such questions to determine. If, in a proper proceeding, a court should decide the right of the trustees, either by construing the will, or by giving directions as to how and by whom the stock should be voted, the trustees as well as the corporate management would be bound by such ruling.

Appellants, however, claim that because the Northern Trust Company is a co-trustee it is therefore an owner and the stockholders' meeting should have enforced the directions contained in the will of Schmidt. Schmidt, as trustee, however, is a like owner and denies the power asserted by his co-trustee. The voting rights of the trustees do not appear in any way upon the corporate record, except that they are registered as trustees and are by law thereby deemed to hold and act jointly. The cases involv-

ing voting power do not have application if no fixed or given amount of stock was authorized to be voted by the corporate trustees.

Under the claim made by appellants the Northern Trust Company had a roving commission to vote from 1 to 274 shares for any candidate selected by it. Whether a general designation of such power is valid will have to be decided in a proceeding in which all of the persons interested in the exercise of such power, viz., the trustees and the beneficiaries, have a voice in the proceeding. But where, as here, the stock appears of record in such a manner as to require its being voted jointly it would not be "germane to the distinctive purpose of a *quo warranto* case" (chap. 112, sec. 3) to decide how the stock ought to be voted under the construction of the will, which might give one of the trustees the separate right to vote the stock as opposed to the joint right appearing upon the corporate records.

Many cases have been cited by counsel none of which applies to the point necessary for a determination of this cause. Inspection of the corporate records discloses the directors acted properly in not counting the votes of the Northern Trust Company for appellant Deering, because from the corporate records it did not appear to have the right, and did not have the proxy of its co-trustee, to vote the stock in question.

It appears, therefore, that respondent Botts was properly declared elected director by the stockholders' meeting, and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*